[No. 43865. En Banc. July 29, 1976.]

THE STATE OF WASHINGTON, *Appellant*, v. EDWIN DONALD NEWTON, *Respondent*.

*Robert E. Schillberg, Prosecuting Attorney,* and *David G. Metcalf, Deputy,* for appellant.

*Robert T. Farrell,* for respondent.

HOROWITZ, J.—The State appeals a decision of the Snohomish County Superior Court, on defendant's application for post-conviction relief, ordering defendant's judgment and sentence vacated because defendant's plea of guilty was accepted by the trial court without an admission of guilt and in the face of his protestations of innocence.

The facts are these. On January 16, 1973, defendant Edwin Donald Newton was charged by information in Snohomish County Superior Court with one count of first-degree murder (premeditated) for the killing of Robert L. Campbell on or about December 15, 1972, and two counts of second-degree assault. The same day defendant, represented by counsel, was arraigned before Judge Daniel Kershner and pleaded not guilty.

April 3, 1973, the State submitted to the court affidavits of four of its witnesses for consideration in a forthcoming hearing upon defendant's application for bail. The affidavit

of George Steven Nelson states the following. Defendant told him he had a grudge against Robert Campbell, whom Nelson did not know. On the evening of December 15, 1972, defendant left Nelson's home with a .22 caliber revolver. Later that evening or early the next morning, defendant returned and told Nelson he had killed a person. On December 16, 1972, Nelson and defendant took a drive together to pick up a car, during which time defendant began talking about the person killed. At some point in the drive, defendant told Nelson to stop the car and look in a ditch, where Nelson saw a dead adult male. There was a car nearby which defendant then drove back to Arlington, Washington.

The affidavit of Mary Hamlin states she became acquainted with defendant at the end of September 1972. Six weeks later, she states, she heard defendant say he did not like Robert Campbell and that he was going to kill him.

The affidavit of James Tilson states that on December 16, 1972, defendant forced him into a car at gunpoint and drove him to a particular location where they stopped and got out. He saw the dead body of an adult male in a ditch. Defendant threatened Tilson with death if he did not help defendant move the body to another location. Tilson did so. The body was put in the trunk of the car, moved to another location, and dumped out.

The affidavit of Thomas Hart, a deputy sheriff with the Snohomish County Sheriff's Office, states he followed defendant, who was then armed with a .22 caliber pistol, up the stairs in an Arlington, Washington, hotel and arrested him. On December 18, 1972, he took a statement from defendant. It states on the evening of December 15, 1972, defendant was with Robert Campbell, and they drove to the location at which both James Tilson and Steven Nelson indicated they had seen a body. Defendant then had in his possession a .22 caliber pistol. He and Campbell had an argument, and Campbell was killed in a struggle over this gun. Defendant stated he did not know exactly how the killing occurred.

The hearing upon defendant's application for bail was held April 5, 1973, in Snohomish County Superior Court before Judge Paul D. Hansen. Defendant was represented by counsel. Bail was denied.

On June 11, 1973, a second amended information was filed, adding the charge of robbery and the alternative of first-degree murder while committing robbery. Later that day a third amended information was filed, omitting all charges but murder, which was now reduced to second degree. The same day defendant was arraigned before Judge Hansen on the third amended information. Defendant was represented by counsel. The prosecutor told the court that after discussion among himself, defendant's counsel, and defendant, the State agreed to the reduced charge and defendant agreed to plead guilty to the reduced charge. Newton, upon the court's inquiry, confirmed that he and his attorney had discussed the amended information and that he desired to plead guilty.

Defendant then signed a statement of defendant on a plea of guilty in the presence of his counsel, the deputy prosecuting attorney, and Judge Hansen.[1] It states the court has informed him of his right to demand 1 day in which to answer the arraignment, his right to counsel and his right to trial by jury or to the court. It further states the plea of guilty to second-degree murder is entered freely and voluntarily, without promises of leniency or special treatment, and without threat of harm. It states he understands the nature of the charge in the information, and that if he is sentenced to a penal institution, the court may give him a maximum sentence of life imprisonment, with the minimum sentence to be set by the Board of Prison Terms and Paroles. It states he has read the foregoing statement, has received a copy of it, and has no further questions to ask of the court or anyone pertaining to his arraignment. It finally states he pleads guilty to the crime as charged.

A sentence admitting he committed the crime in the

---

[1] The statement signed is similar but not identical to that required by CrR 4.2 (g), which went into effect July 1, 1973.

manner charged in the information, however, was deleted by defendant before signing. The statement contains no factual account of what occurred or how defendant came to be charged.

The court noted the deletion, and told defendant he would still permit the guilty plea. A presentence report was then ordered by the court, and sentencing scheduled for August 1, 1973. Defendant then made a short statement to the court in which he reiterated his plea of guilty, but stated he was not guilty of second-degree murder. The court did not inquire of defendant as to the facts of the case, nor why defendant believed he was innocent.

On August 1, 1973, the presentence report was filed with the court. It states in part that defendant claims to be innocent of second-degree murder, but guilty of manslaughter. It says defendant admits killing Campbell. However, it says defendant contends this was after Campbell had too much to drink and attacked him with a knife. This began a fight in which Campbell was accidently shot by defendant's pistol when they were wrestling over it. The report also states an autopsy performed on decedent revealed a .22 caliber bullet hole behind the right ear.

The same day the prosecutor filed a prosecutor's statement for sentencing. It includes a description of the proposed testimony of witnesses for the State, other than the four mentioned above, who would testify that the decedent was afraid of knives and had never been seen with one; the decedent was not drunk the evening of December 15, 1972; and defendant had threatened to kill decedent. It also states no signs of physical struggle were found on Campbell or defendant.

The same day, August 1, 1973, defendant came before Judge Hansen for sentencing. Defendant was represented by counsel. Defendant, after being advised of his basic civil and constitutional rights, reaffirmed his plea of guilty. Judge Hansen then sentenced defendant to life imprisonment. On August 6, 1973, the judge signed the judgment and sentence, with credit for 8 months in county jail.

January 6, 1975, defendant filed with the Court of Appeals an application for post-conviction relief. CrR 7.7. It states as grounds for relief from defendant's conviction and sentence a violation of due process and a denial of the protection of CrR 4.2 in the entry of his guilty plea. It states that although the trial court was aware defendant deleted from his statement on plea of guilty the sentence admitting guilt, the court did not question him about this. In addition, he contends, the court did not have before it at this time any testimony showing defendant guilty of the crime charged or establishing a factual basis for the plea.

March 27, 1975, the Court of Appeals ordered the petition transmitted to the Snohomish County Superior Court for a hearing. July 3, 1975, Judge Thomas McCrea granted the petition on the ground the trial court did not require an admission of guilt when it accepted defendant's plea. The guilty plea, judgment and sentence were ordered vacated. July 7, 1975, the court further ordered petitioner remanded to the custody of the Snohomish County authorities for a new trial on the second-degree murder charge or such other or further charges as may be filed against him. The State now seeks review by direct appeal to this court. ROA I-14.

Defendant's contentions center about Judge Hansen's alleged failure to comply with CrR 4.2 in entering judgment and sentence upon the guilty plea. The present CrR 4.2 became effective July 1, 1973, and requires in subsection (d):

The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

Judgment was entered upon defendant's guilty plea on August 6, 1973, and it is therefore necessary to determine if the court did comply with CrR 4.2(d). Specifically, the questions raised are (1) whether the requisite "factual basis" may be obtained from sources other than defendant, when defendant desired to plead guilty to the second-degree murder charged but refused to admit guilt, and (2) if

the answer to the first question is yes, whether a sufficient factual basis apart from defendant's admissions was established to satisfy CrR 4.2 (d).

■ The "factual basis" requirement of CrR 4.2 (d) is identical to a provision in the 1966 version of Fed. R. Crim. P. 11. 18 U.S.C. (App.) 4489 (1970). The intent of the drafters of this provision in CrR 4.2 (d) was to copy Fed. R. Crim. P. 11. *Criminal Rules Task Force, Washington Proposed Rules of Criminal Procedure* 48-49 (1971). The 1975 amendment to Fed. R. Crim. P. 11 retains the "factual basis" requirement in substantially the same form in subsection (f), which provides:

> Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Federal cases interpreting Fed. R. Crim. P. 11, therefore, are helpful to a proper resolution of defendant's contentions.

■ The first question is whether the necessary factual basis may be established from sources other than the admissions of the defendant. CrR 4.2 (d) does not set forth a procedure to be followed by the trial court in establishing the factual basis. The comments to the Washington rule and the federal cases suggest the factual basis may be established from any reliable source. The comments to CrR 4.2 (d) state the trial court "might ask the prosecuting attorney to present a 'prima facie' case, or he might ask the defendant to explain what happened." *Criminal Rules Task Force, supra* at 49. The federal cases have not placed any limits on the sources to be used in establishing a factual basis. The court in *Irizarry v. United States*, 508 F.2d 960, 967 (2d Cir. 1974), held: "It is undeniably true that the district court, in determining whether there was a factual basis for the plea, was free to rely on any facts at its disposal—not just the admissions of the defendant." Thus, the trial court might refer to "the prosecutor's recital of the evidence the government will offer" *(United States v.*

*Davis,* 516 F.2d 574, 578 (7th Cir. 1975)), signed statements from government witnesses implicating defendant in the crime charged (*United States v. Jerry,* 487 F.2d 600, 610 (3d Cir. 1973)), or the presentence report. *Turner v. United States,* 320 F. Supp. 1204, 1206 (E.D. La. 1970). .

Whatever material relied upon by the trial court must be made a part of the record. *Irizarry v. United States, supra* at 967; *United States v. Davis,* 493 F.2d 502, 503 (5th Cir. 1974.)

■ The factual basis requirement of CrR 4.2(d) does not mean the trial court must be convinced beyond a reasonable doubt that defendant is in fact guilty. "It should be enough if there is sufficient evidence for a jury to conclude that he is guilty." *United States v. Webb,* 433 F.2d 400, 403 (1st Cir. 1970). The standard in *Webb* was met in the instant case. The evidence presented to the court by the prosecutor—the witness affidavits, the presentence report, and the prosecutor's statement—was sufficient evidence from which a jury could find beyond a reasonable doubt defendant intentionally killed decedent, and was therefore guilty of at least second-degree murder. RCW 9.48.040(1); *State v. Palmer,* 104 Wash. 396, 400-01, 176 P. 547 (1918).

■ The trial court did not make a specific finding in the record that it was "satisfied" the factual basis existed. CrR 4.2(d). Although it is good practice for the trial court to do so, it is not required by CrR 4.2. The advisory committee drafting Fed. R. Crim. P. 11 was of the unanimous view "that a specific finding in the record [of a factual basis] is unnecessary, and that the pronouncement of judgment is sufficient indication that the required determination has been made." Stanley, *Requirements of Rules 11 and 44 of the Federal Rules of Criminal Procedure,* 45 F.R.D. 155, 158 (1969); *accord, United States v. Nichols,* 440 F.2d 222, 223 (D.C. Cir. 1971); *State v. Sutherland,* 14 Ariz. App. 344, 346-47, 483 P.2d 576 (1971).

■ Since we hold that the factual basis for the plea may come from any source the trial court finds reliable, and not just the admissions of defendant, the fact a defend-

ant who desires to plead guilty also refuses to admit guilt does not require a rejection of the plea if the factual basis for the plea can nevertheless be established. Federal courts have followed this reasoning in their interpretation of Fed. R. Crim. P. 11, and have refused to invalidate guilty pleas properly accepted under the rule merely because the defendant refused to admit guilt.

> When the trial judge is presented with a "factual basis for the plea", . . . an intelligent and voluntary counselled plea should not be refused simply because the defendant who is willing to enter a plea of guilty is unable or unwilling to testify to his guilt in factual terms. The entry of such a plea of guilty in such a situation is not contrary to the interests of justice. Rule 11 was intended for the protection of the defendant, and does not require a denial to the defendant of the opportunity to act in his own best interest, as advised by his trial counsel.

(Footnote omitted.) *United States v. Gaskins*, 485 F.2d 1046, 1049 (D.C. Cir. 1973); *accord, United States v. Davis*, 516 F.2d 574, 577 (7th Cir. 1975); *United States v. Jerry*, 487 F.2d 600, 608-10 (3d Cir. 1973).

Defendant also relies upon CrR 4.2 (g) (13) to invalidate his plea. CrR 4.2 (g) (13) requires that the statement signed by each defendant upon pleading guilty include a recitation by the defendant in his own words of "what I did that resulted in my being charged with the crime in the information." Defendant argues this constitutes a requirement that a defendant desiring to plead guilty also admit guilt. Giving full effect to this contention, we nevertheless do not agree that CrR 4.2 (g) (13) imposes such a requirement. Rather, its purpose is clearly to aid the trial court in determining if a factual basis for the plea exists. Here, the factual basis was established from sources other than the admission of defendant. It was therefore not reversible error for defendant's statement to be so lacking.

Defendant, however, contended in his brief to this court that even if CrR 4.2 permits acceptance of his equivocal plea, it is nevertheless a violation of due process to do so.

Although he abandoned this contention during oral argument, we note it briefly. Defendant does not rest his due process argument upon a claim his plea was not freely, understandingly or competently made. Rather, it appears to be based upon the premise that public policy requires a trial whenever a defendant refuses to admit guilt. We do not agree that such a plea violates due process. *North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970), holds to the contrary. In *Alford*, the court held, in a case not governed by Fed. R. Crim. P. 11 or a state equivalent, that a plea of guilty to second-degree murder was constitutionally valid in spite of defendant's protestations of innocence, when there was strong evidence of guilt before the trial court and the plea was "a voluntary and intelligent choice among the alternative courses of action open to the defendant."

Defendant further contends our decision in *State v. Stacy*, 43 Wn.2d 358, 261 P.2d 400 (1953), requires the trial court to reject such a guilty plea, notwithstanding neither due process nor CrR 4.2 imposes this requirement. In *Stacy*, defendant was charged with first-degree kidnaping and first-degree assault. The case proceeded to trial, the chief defense being insanity. On the second day of trial, the prosecutor allegedly stated that unless defendant changed his plea to guilty, the state would have defendant confined to a hospital for the criminally insane for the rest of his life. On the urging of his attorneys, the defendant agreed to plead guilty to the assault charge, with the state dropping the kidnaping charge. Defendant, however, refused to admit his guilt to the court, and repeatedly stated his innocence. The court nevertheless accepted the plea, and gave defendant a 20-year sentence on the assault charge. Upon a motion to vacate the judgment, defendant contended his guilty plea was a product of duress from his attorneys and family, and threats from the prosecutor. This court granted defendant a new trial, holding that under the circumstances it was error to accept the equivocal plea. Although the court did state the trial court should never accept a

guilty plea accompanied by a protestation of innocence, it is clear that the paramount concern of the court was to protect the defendant's right to trial when it was not clear from the record that defendant, with his prior history of insanity and claims of duress, was competent to accept his attorneys' advice and plead guilty. A later Washington case, *Woods v. Rhay*, 68 Wn.2d 601, 605, 414 P.2d 601 (1966), suggests the holding in *Stacy* is properly invoked in circumstances in which an equivocal plea reveals to the trial court that defendant is not pleading voluntarily or competently. Federal courts, in approving an equivocal guilty plea under Fed. R. Crim. P. 11, have warned:

> When a defendant seeks to plead guilty while protesting his innocence, the trial judge is confronted with a danger signal. It puts him on guard to be extremely careful that his duties under Rule 11 are fully discharged.

*United States v. Gaskins, supra* at 1049; *accord, United States v. Davis*, 516 F.2d 574, 578 (7th Cir. 1975). An equivocal plea may be an indication the plea is not voluntarily and intelligently made. It is clear, however, that the aspect of due process governed by *Stacy* is inapplicable to the instant case. As already noted above, there is no contention defendant's guilty plea was not freely, understandingly and competently made. On the contrary, the record would not support such a contention were it made.

The judgment and sentence entered upon the plea of guilty were valid, and the order granting post-conviction relief is therefore vacated.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.