[No. 2076-2.    Division Two.    January 4, 1977.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDERSON DURHAM, *Appellant.*

*Michael D. Smith,* for appellant (appointed counsel for appeal).

*Donald F. Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Special Counsel,* for respondent.

REED, J.—Defendant Anderson Durham appeals from a Pierce County Superior Court order denying his petition under former CrR 7.7[1] for post-conviction relief from a judgment and sentence entered on his plea of guilty to second-degree assault. Defendant's contention is that his plea was equivocal and should not have been accepted. For the reasons set forth herein we affirm the order of the trial court denying the relief sought.

Defendant was first charged by information filed April 17, 1973, with assault with intent to kill one Thomas Wiegand by shooting him with a firearm, a .25 caliber pistol. As the result of the plea negotiations, defendant appeared before the trial court on February 4, 1974, and entered a plea of guilty to an amended charge of second-degree assault which alleged he had willfully inflicted grievous bodily harm on Wiegand, but omitted any reference to the gun.

The State presented no witnesses nor did it outline in narrative form the evidence it would present to support a conviction. The deputy prosecutor did, however, make the following statement:

> At this time, Your Honor, the State is moving to amend its complaint to charge second degree assault by means of infliction of grievous bodily harm upon the person of one Thomas Wiegand by Mr. Durham. The reasons for this is: it is part of the pretrial negotiations as well. Your Honor, the firearm which was involved in the first degree assault was not the defendant's firearm, and the defend-

[1] CrR 7.7 has been superseded by Rules 16.3 through 16.15 of the Rules of Appellate Procedure, effective as of July 1, 1976. See RAP 16.3(b).

ant would be talking in terms of self defense . . . with reference to the first part of the action, but not the second part of the action. . . . After the dust had settled, so to speak, the fire continued. So for those reasons and with the understanding the defendant is intending to plead guilty to the amended information, Your Honor, the State is moving to amend.
*I think that might be explained in some more detail.*

(Italics ours.)

At the same time the State handed up to the court defendant's "Statement of Defendant on Plea of Guilty" (CrR 4.2(g)) in which he described the circumstances leading up to his being charged as follows:

I, Anderson Durham, approached the victim to ask him why he stole something out of my apartment, an argument started, and he kicked me and pulled the gun out of his coat. I grabbed his arm and during the struggle the gun went off striking the victim. At this time I pulled the gun away from the victim and shoved him against the wooden booth causing his injuries.

The trial judge made no independent inquiry of the defendant concerning the manner in which the assault had been committed, asking him only if he understood that if his plea was accepted there would be no trial and no appeal and that he faced a possible maximum sentence of 10 years. Receiving affirmative responses to these questions, the court accepted defendant's plea and he was subsequently sentenced to a prison term of 10 years.

Defendant filed two petitions for post-conviction relief with this court, alleging in one a failure of the prosecuting attorney to abide by a promise to recommend probation in exchange for his plea and, in the second that his plea was equivocal and should not have been accepted. These two petitions were consolidated by this court and the matter referred to Pierce County Superior Court for a determination on the merits of each claim. After hearing evidence, both issues were resolved against defendant, who appeals only with respect to the plea issue.

This case comes hard upon the heels of our Supreme Court's decision in *State v. Newton*, 87 Wn.2d 363, 552 P.2d

682 (1976) and our decision in *State v. Iredale*, 16 Wn. App. 53, 553 P.2d 1112 (1976),[2] both of which construed CrR 4.2[3] as it relates to the acceptance of guilty pleas. In *Iredale*, we struck down a guilty plea couched in terms of self-defense because it raised grave doubts as to whether defendant understood the nature of the charge against him and whether his plea was therefore truly voluntary. In so doing we held that CrR 4.2 restricts the search for evidence of the plea's voluntariness to the record as it exists when the plea is accepted, and that the last sentence of CrR 4.2(d) does not sanction, as it might seem to, a deferral of the inquiry into the factual basis for the plea until entry of judgment. In *Newton* our Supreme Court, following *North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160, (1970), approves acceptance of an otherwise voluntary plea of guilt even though coupled with a protestation of innocence where there is in the record strong evidence of defendant's guilt and his plea represents " 'a voluntary and intelligent choice among the alternative courses of action open to [him].' " *State v. Newton, supra* at 372.

Under the *Newton* court's construction of the rule, the plea taking judge is not restricted to defendant's statements alone, in determining if the plea should be accepted, but may consider information from any reliable source in addition thereto, provided it is made a part of the record. That decision countenanced consideration of a presentence report and did not restrict the judge to the record as it stood at the time the plea was accepted but, as we noted in *Iredale*, even though CrR 4.2 was in effect at the time of sentencing in *Newton*, it had not yet become effective on the date the plea was accepted. The results in both *Newton*

[2]In *State v. Iredale*, 16 Wn. App. 53, 553 P.2d 1112 (1976), the petition for rehearing was denied September 16, 1976; petition for review now pending before the Supreme Court.

[3]CrR 4.2(d) provides:

"**Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

and *Iredale* were influenced by federal court decisions interpreting Federal Rule of Criminal Procedure 11, after which our CrR 4.2 is modeled. See, for example, *Irizarry v. United States*, 508 F.2d 960 (2d Cir. 1974).

In *Wood v. Morris*, 87 Wn.2d 501, 554 P.2d 1032 (1976), our Supreme Court again construes CrR 4.2 in light of some of the same federal decisions and with particular reference to *McCarthy v. United States*, 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969), where Chief Justice Warren states at page 465:

> the rule [Fed. R. Crim. P. 11 (1975)] is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination.

Justice Utter, speaking for the *Morris* court at page 511 of that opinion, states:

> we conclude that our rule of court should be construed as its model had been construed prior to the drafting and adoption of the Washington rule. . . . Thus, the trial judge must make direct inquiries of the defendant as to whether he understands the nature of the charge and the full consequences of a guilty plea. Although not required by the constitution as we read *Boykin v. Alabama*, [395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969)] *supra*, under our rule of court the record of the plea hearing, *unsupplemented by any evidence extrinsic to that record*, must show on its face that the plea was entered voluntarily and intelligently. . . .
>
> In addition, failure to comply fully with CrR 4.2 requires that the defendant's guilty plea be set aside and his case remanded so that he may plead anew.

(Italics ours.)

The equivocal nature of a guilty plea, either because it is coupled with an outright protestation of innocence, or because it is laced about with excuses or claims in mitigation, may well be an indication the defendant does not fully understand the nature of the charge against him and that the plea is not truly voluntarily and intelligently made. *Cf. State v. Newton, supra; United States v. Gaskins*, 485 F.2d 1046 (D.C. Cir. 1973); *accord, United States v. Davis*, 516 F.

2d 574, 577 (7th Cir. 1975); *United States v. Jerry*, 487 F. 2d 600, 608-10 (3d Cir. 1973).

In the instant case the trial court had before it at arraignment only the original information, the amended information, defendant's CrR 4.2(g) statement, and the prosecutor's cryptic remarks. Despite the invitation contained in the prosecutor's additional statement that "I think that might be explained in some more detail" no further inquiry was made. Enlightened by the reference hearing and by the briefs and arguments on appeal, we can appreciate the State's contention that defendant's action of shooting Wiegand on the one hand, and shoving him against the booth on the other, were separate and distinct acts—that the first may have been excusable, but the second was not. However, we are hard pressed to so conclude when relegated by CrR 4.2 to those matters which were within the knowledge of the trial court and considered by it at the time the plea was accepted. It would be just as reasonable to conclude that the act of shoving was inseparable from and therefore part of a single effort to disarm the victim by wresting the gun from him.

Even though the information before the trial judge when the plea is tendered need not convince him of defendant's guilt beyond a reasonable doubt, that evidence must be of sufficient stature to support such a finding by the jury before the plea may be accepted. *State v. Newton*, *supra* at 370. Second-degree assault (RCW 9.11.020) requires there be evidence from which the jury may find beyond a reasonable doubt the defendant "wilfully" inflicted "grievous bodily harm" upon his victim. *State v. Miles*, 77 Wn.2d 593, 464 P.2d 723 (1970); *State v. Stewart*, 73 Wn.2d 701, 440 P.2d 815 (1968). Clearly, neither defendant's explanation of the facts giving rise to the charge nor the prosecutor's explanation provide a sufficient foundation for a finding, either that the injuries were willfully inflicted or that they were grievous in nature or extent. Rather, defendant's statement appeared to be an attempt to justify what he had done. These signals should have triggered a

further inquiry into the factual basis for the plea and to determine if defendant understood the nature of the charge before accepting the plea.

Accordingly, we hold there was a failure in the instant case to comply with CrR 4.2 because the record made at the time of the plea's acceptance, unaided by evidence extrinsic to that record, does not clearly and convincingly demonstrate that defendant fully understood the nature of the charge and was pleading voluntarily and intelligently.

Our construction of CrR 4.2 does not, however, require that we vitiate Mr. Durham's plea. As noted in *Wood v. Morris, supra* at 514-15, circumstances may require that a new or different interpretation or construction of a court rule be given prospective application only. The criteria to be considered are the purpose of the new rule, the extent to which law enforcement agencies and courts have justifiably relied upon the preexisting rule, and the effect of retroactive application upon the administration of justice. *Brumley v. Charles R. Denney Juvenile Center*, 77 Wn.2d 702, 466 P.2d 481 (1970); *Miller v. Rhay*, 1 Wn. App. 1010, 466 P.2d 179 (1970); *Halliday v. United States*, 394 U.S. 831, 832, 23 L. Ed. 2d 16, 89 S. Ct. 1498 (1969). After reviewing various interpretations placed upon the Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), Justice Utter concludes that our state trial judges were justified in relying upon those prior interpretations which permit recourse to the totality of the circumstances in determining whether constitutional requirements of a voluntary plea have been met. *Miesbauer v. Rhay*, 79 Wn.2d 505, 487 P.2d 1046 (1971); *State v. Hadsell*, 6 Wn. App. 946, 497 P.2d 254 (1972); *Miller v. Morris*, 10 Wn. App. 694, 519 P.2d 1314 (1974). Recognizing that retrospective application of the court's interpretation of CrR 4.2 could result in the invalidation of countless pleas and adversely impact on the administration of justice, the *Wood v. Morris* court limited its holding to pleas entered after the date of that opinion, September 23, 1976. We perceive that the same criteria dictate that our

restrictive interpretation of CrR 4.2 in *State v. Iredale, supra*, operate only upon guilty pleas accepted subsequent to the date of that opinion, August 9, 1976.

We thus look in the instant case to the totality of the circumstances, including the information contained in the presentence report and the evidence adduced at the reference hearing, to determine if defendant Durham's plea was properly accepted. We find that it was. According to the presentence information, eyewitnesses would have stated that the defendant approached the victim's table in a tavern, provoked an argument with him and struck him twice in the face; that the victim responded by displaying a .25 caliber pistol, which he was putting away when the defendant grabbed the gun and shot him. Further, that the victim had fallen wounded to the floor when the defendant kicked him about the body and head. Police records and court files reveal defendant had a predisposition for instigating barroom fights, had several times been charged with assault, and had been convicted on more than one occasion of crimes involving assaultive behavior.

At the evidentiary hearing defendant testified as follows:

A  The prosecutor turned and told me if I'd go on and plead guilty to the second degree assault that he would recommend probation for me and I had a good chance of getting it because I have no prior convictions, and *I stated to him at the time that I would not plead guilty to shooting anybody, you know, that my plea would be to assault by hitting him and kicking him and that was all.*

Q  Before you entered a plea to assault in the second degree were you charged with assault in the first degree?

A  In the first degree.

Q  So your plea was to a reduced charge; is that correct?

A  That's correct.

. . .

Q  Did he make that [recommendation of probation] of a flat statement or simply an indication?

A  He made it as a flat statement, otherwise I would have carried it into court anyway, *because I figured I had a good case in self defense.*

Q Are you saying that had you not been given those assurances by the prosecutor you would have insisted on a trial?

A Right.

Q *And you would not have cared if it was a trial on first or second degree assault?*

A No, I wouldn't.

(Italics ours.)

Additionally, defendant's trial counsel testified that during plea negotiations the prosecuting attorney revealed to defendant the names of the State's witnesses, the substance of their testimony, and the fact they were subpoenaed and ready to go to trial. While defendant's attorney might have been interrogated more pointedly at the reference hearing regarding his client's understanding, there is an inference he performed his duties of advising defendant concerning the nature of the charge, any possible defenses, and the weight of the evidence against him in counseling the guilty plea. *State v. White*, 5 Wn. App. 615, 489 P.2d 934 (1971); *Woods v. Rhay*, 68 Wn.2d 601, 414 P.2d 601 (1966). *See also Henderson v. Morgan*, 426 U.S. 637, 49 L. Ed. 2d 108, 96 S. Ct. 108 (1976).

In summary, we believe the State has sufficiently shown from a totality of the circumstances that the defendant understood the nature of the charge against him and was intelligently pleading to having assaulted Wiegand *after disarming him*, in such a manner as to constitute second-degree assault.

The order of the trial court denying defendant's application for post-conviction relief is affirmed.

COCHRAN and RUMMEL, JJ. Pro Tem., concur.

Petition for rehearing denied January 24, 1977.

Review denied by Supreme Court June 8, 1977.