FILED
COURT OF APPEALS
DIVISION II

2014 MAY -6 AM 8:28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43472-5-II |
| Respondent, | |
| v. | |
| | Consolidated with No. 43479-2-II, 43482-2-II |
| SPENCER LAWRENCE OBERG, | And |
| Appellant, | |
| In re Personal Restraint Petition of | No. 44900-5-II |
| SPENCER LAWRENCE OBERG, | UNPUBLISHED OPINION |
| Petitioner. | |

HUNT, J. — Spencer Lawrence Oberg appeals his sentences and a community custody condition requiring him to undergo drug and alcohol evaluation and treatment related to three guilty plea convictions. He argues that (1) the Pierce County Superior Court failed to make the statutorily required finding that a chemical dependency contributed to his offenses and there was no evidence that alcohol was a factor in the current offenses, prerequisites for the drug and alcohol related community custody condition of his sentences; and (2) his total sentence for his third degree assault conviction exceeds the 60-month statutory maximum for that offense. In a pro se Statement of Additional Grounds for Review[1] (SAG), Oberg asserts that (1) the superior court erred in imposing a consecutive sentence, in violation of a global plea agreement

---

[1] RAP 10.10.

encompassing both Pierce County's and King County's charges; (2) the State breached this agreement by failing to advise the superior court that it was bound by the global plea agreement, suggesting that his King County convictions for charges that were part of the global plea agreement were "separate"[2] offenses, failing to list the King County convictions as "other current offenses"[3] on the plea statements and the judgment and sentences, and misrepresenting the jail-time credit to which Oberg was entitled under the global plea agreement; (3) the superior court erred in not awarding him full credit for his time served; and (4) his plea statements incorrectly stated that he was ineligible for a Drug Offender Sentencing Alternative (DOSA)[4] sentence. Finally, in a personal restraint petition (PRP), which we consolidated with this direct appeal, Oberg essentially repeats the claims he makes in his SAG.

The State concedes that Oberg's third degree assault sentence exceeds the statutory maximum for that offense and that remand for resentencing on this conviction is required; we accept this partial concession. Because the record contains no evidence that alcohol was a factor in Oberg's convictions, we also hold that the superior court erred in imposing alcohol related community custody conditions. Accordingly, we remand to the superior court to resentence Oberg on the third degree assault conviction and to strike the alcohol related community custody conditions in the judgments and sentences for cause numbers 10-1-03778-2 and 11-1-02533-2.

---

[2] SAG at 2.

[3] SAG at 2.

[4] RCW 9.94A.660(1).

No. 43472-5-II (consolidated with Nos. 43479-2-II, 43482-2-II and 44900-5-II)

We otherwise affirm Oberg's sentences and his drug-related community custody condition. And we deny his personal restraint petition.

## FACTS

### I. PIERCE COUNTY AND KING COUNTY PLEA AGREEMENTS

In September 2010, the Pierce County prosecutor charged Spencer Lawrence Oberg with unlawful possession of a controlled substance (methadone) and unlawful possession of a controlled substance (oxycodone) under Pierce County cause number 10-1-03778-2. In January 2011, the Pierce County prosecutor charged Oberg with residential burglary and third degree malicious mischief under cause number 11-1-00523-4. And in June 2011, the Pierce County prosecutor charged Oberg with obtaining or attempting to obtain a controlled substance (oxycodone) by fraud, deceit, or misrepresentation; unlawful possession of a controlled substance (oxycodone); third degree assault of a law enforcement officer; and possession of another's identification under cause number 11-1-02533-2. During this same time period, Oberg committed a series of offenses in King County, which resulted in several additional charges under two separate King County cause numbers (11-1-06655-6 and 11-1-06585-1).

Oberg entered into several plea agreements to resolve all charges in both counties. On November 15, 2011, Oberg agreed to enter *Alford/Newton*[5] pleas to the following amended Pierce County charges and the State agreed to recommend the following sentences:

    (1)    residential burglary—84 months (cause number 11-1-00523-4);

---

[5] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (a defendant may plead guilty while disputing the facts alleged by the prosecution); *State v. Newton*, 87 Wn.2d 363, 552 P.2d 682 (1976).

3

(2)     obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation—24 months, and third degree assault—51 months (cause number 11-1-02533-2); and

(3)     second degree identity theft—57 months, and unlawful possession of a controlled substance (oxycodone)—24 months (cause number 10-1-03778-2).

The State further agreed to recommend that (1) these sentences run concurrently with each other and with the King County sentences; (2) Oberg receive credit for time served; and (3) the superior court impose "drug/alcohol treatment per [community corrections officer] CCO" for cause numbers 10-1-03778-2 and 11-1-02533-2. Clerk's Papers (CP) at 39, 98. Each "Statement of Defendant on Plea of Guilty" advised Oberg, "The judge does not have to follow anyone's recommendation as to sentence." CP at 39, 98 (emphasis omitted). Each of the attached offender score stipulations listed the King County offenses as "convictions" rather than "other current offenses." CP at 16, 46, 107.

## II. GUILTY PLEAS AND SENTENCING

On November 15, 2011, Oberg pled guilty to the amended Pierce County charges. Oberg's counsel advised the superior court that the pleas were all *Alford/Newton* pleas and that they represented a "global resolution" that also included the two King County cases noted in the Oberg's guilty plea statements. Report of Proceedings (RP) at 3. The State also told the superior court that "Mr. Oberg has already pled guilty and been sentenced on two separate felony cause

4

numbers up in King County."[6] RP at 4.

The superior court then engaged in an extensive colloquy, during which Oberg confirmed that he had reviewed the Statements of Defendant on Plea of Guilty with his counsel, that he had read the documents himself, and that he had no questions about these documents. The superior court then reviewed with Oberg each of the charges under each cause number, the standard sentencing ranges for each charge, and the State's sentencing recommendations (1) to run the Pierce County sentences concurrently with all other Pierce County sentences and with the previously imposed King County sentences, and (2) that Oberg "get a drug and alcohol evaluation and treatment according to the community corrections officer." RP at 8. Oberg acknowledged that he understood the State's recommendations. RP at 8. For each charge, the superior court advised Oberg that it was not bound by the State's sentencing recommendations and that it (the court) could impose consecutive sentences; Oberg also stated that he understood this. Oberg then pled guilty to each of the charges. The superior court accepted his pleas and proceeded to sentencing.

During sentencing, the State (1) noted Oberg's numerous previous offenses; (2) advised the superior court that Oberg had unsuccessfully participated in both the Pierce County Drug Court Program and a DOSA program through the Department of Corrections; (3) stated, "Not

---

[6] On November 4, 2011, the King County Superior Court sentenced Oberg to a total of 76 months of confinement for (1) two counts of forged prescriptions (oxycodone) and one count of unlawful possession of a controlled substance (methamphetamine) under cause number 11-1-06585-1; and (2) two additional counts of forged prescriptions (oxycodone), one count possession of stolen firearm, and one count of second degree identity theft, under cause number 11-1-06655-6. The King County Superior ran all sentences concurrently and noted that these sentences should also run concurrently with the Pierce County sentences.

only is [Oberg] young, but it is obvious that controlled substances have had a pretty significant hold on him"; and (4) recommended a "high end," 84-month sentence based on Oberg's extensive criminal history and "that he was basically on a crime spree happening over two different counties." RP at 18, 19. When the superior court asked what Oberg's King County sentences were, the State responded that King County had given Oberg 76 months.

Defense counsel (1) presented the "agreed recommendation of 84 months"[7]; (2) acknowledged that over time, as the charges had increased in number, "[i]t became really apparent in this case that drug addiction was pushing this thing"[8]; (3) commented that "[e]very time [Oberg] got arrested" he was carrying drugs[9]; and (4) stated:

> What I'm asking the Court to impose, don't go beyond any sort of consecutive sentences, keep it at 84 months, the maximum concurrent as the global offer thing. Anything the Court can do to make sure that Mr. Oberg gets some additional treatment, whatever resources are available for him to do that.

RP at 25. Oberg's wife asked the superior court to allow Oberg to have treatment and to sentence him to 76 months, like the King County court had done, "because of the drug problems that he has." RP at 22. Oberg similarly acknowledged his substance abuse issues.

The superior court commented extensively on Oberg's young age (23), criminal history (24 or 25 felonies), family support, drug use (including failed drug court), and the following sentencing considerations:

---

[7] RP at 20.

[8] RP at 23.

[9] RP at 24.

I am also troubled by the sheer volume of the crimes here, and in this particular case what is an ongoing pattern of you being under the supervision of the court and being out committing crimes on multiple occasions, not only here in Pierce County, but also in King County. . . . Basically what I'm being asked to do is to wrap up what would be 12 felonies into one sentence, 76 months, which is about six months a felony, on top of somebody who has already maxed out, even before you consider those.

I understand the work that has gone into this by your attorney, by the prosecutors in Pierce County and King County. Some judge has to put the first number up, and apparently the judge in King County has with 76 months. The second judge then has the option of going along with the concurrent sentence or doing a consecutive sentence. That's my decision here today.

. . . .

I guess the bottom line is *I don't think 76 months is enough for everything that has gone on here*. What I'm going to do is on the cause number that ends in 78-2, Count I, the range is 43 to 57 months. I'm going to impose 43 months. I am going to run that *consecutive* to the King County cause numbers. The other counts, the other sentences, would be as recommended, to be concurrent, so the bottom line would be that it would be an additional 43 months for these five felonies that were committed here in Pierce County.

RP at 31-33 (emphasis added).

The superior court sentenced Oberg to (1) 84 months of confinement for residential burglary; (2) 24 months for obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation; (3) 51 months for third degree assault; (4) 43 months for second degree identity theft; and (5) 24 months for unlawful possession of a controlled substance. The superior court ran the 43-month sentence on the second degree identity theft consecutively to Oberg's 76-month King County sentences; it ran the remaining sentences concurrently with each other and with the King County sentences.

In addition to the 51-month sentence for third degree assault (cause number 11-1-02533-2), the superior court imposed 12 months of community custody, noting that the total term of confinement for this conviction should not exceed the 60-month statutory maximum. The

superior court also ordered Oberg to submit to "Drug/Alcohol evaluation and treatment per CCO" under cause numbers 10-1-03778-2 (second degree identity theft and unlawful possession of a controlled substance (oxycodone)) and 11-1-02533-2 (obtaining or attempting to obtain a controlled substance by fraud, deceit or misrepresentation; and third degree assault), and gave him 8 days credit for time served under each cause number. CP at 60, 116.

Oberg appeals his consecutive sentences for second degree identity theft, his third degree assault sentence, the drug and alcohol evaluation and treatment community custody requirements, and the credit he received for time served.

ANALYSIS

I. SENTENCE IN EXCESS OF STATUTORY MAXIMUM

Oberg argues that the superior court erred when it sentenced him to 51 months plus 12 months of community custody for third degree assault because the total sentence exceeded the 60-month statutory maximum for this offense and the court's notation limiting his total confinement to 60 months was not sufficient to cure this error. The State concedes that under our Supreme Court's decision in *State v. Boyd*, 174 Wn.2d 470, 472-73, 275 P.3d 321 (2012), this "*Brooks* notation"[10] no longer operates to ensure the sentence's validity. We agree with

---

[10] A "*Brooks* notation" is a hand-written addition to the judgment and sentence stating that the total combined term of confinement and community custody actually served may not exceed the statutory maximum. *In re Pers. Restraint of Brooks*, 166 Wn.2d 664, 674, 211 P.3d 1023 (2009), *superseded by Boyd*, 174 Wn.2d at 472-73.

No. 43472-5-II (consolidated with Nos. 43479-2-II, 43482-2-II and 44900-5-II)

Oberg, accept the State's concession, and remand for resentencing.[11]

## II. COMMUNITY CUSTODY CONDITIONS

Oberg further argues that the superior court erred by requiring him to undergo drug and alcohol evaluations and treatment as a community custody condition related to his convictions under cause numbers 10-1-03778-2 (second degree identity theft and unlawful possession of oxycodone) and 11-1-02533-2 (obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation and third degree assault) because the superior court failed to make an express finding, under RCW 9.94A.607(1), that he had a chemical dependency that contributed to these offenses.[12] The State counters that (1) a finding that drug use contributed to Oberg's crimes "was implicit in the court's statements to defendant"[13]; (2) the plain language of RCW 9.94A.607(1) does not require the court to use any specific language; thus (3) the court's

---

[11] The superior court's total sentence of 63 months for Oberg's third degree assault conviction exceeded the 60-month statutory maximum by 3 months. RCW 9A.20.021; RCW 9A.36.031(2). Applying *Boyd* here, the sentencing court must reduce the term of community custody so that the confinement combined with the community custody term does not exceed the statutory maximum. *Boyd*, 174 Wn.2d at 472.

[12] The superior court did not impose community custody under the remaining cause number.

[13] Br. of Resp't at 5. We agree with the State that Oberg misinterprets our decision in *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003), as requiring the superior court to make an explicit finding. In *Jones*, we addressed only whether the trial court had authority to order the defendant to participate in mental health treatment and counseling, which involved statutory procedures specific to mental health evaluation and treatment that do not apply here. *Jones*, 118 Wn. App. at 208, 209 (citing former RCW 9.94A.505(9) (2001)). Contrary to Oberg's argument, *Jones* does not require that the superior court's findings be "express"; nor does it discredit the factors on which we rely above to satisfy RCW 9.94A.607(1).

9

implicit finding is sufficient to support the community custody condition.[14] We agree with the State that the superior court's findings were sufficient to support the drug evaluation and treatment community custody condition imposed under RCW 9.94A.607(1). But we agree with Oberg that the superior court did not make findings sufficient to support the alcohol-related condition.

### A. Standard of Review

A defendant may challenge an illegal or erroneous sentence for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); *Jones*, 118 Wn. App. at 204. We review de novo whether the trial court had statutory authority to impose community custody conditions. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). If the condition was statutorily authorized, we review the imposition of crime-related prohibitions for abuse of discretion. *Armendariz*, 160 Wn.2d at 110 (citing *State v. Ancira*, 107 Wn. App. 650, 653, 27 P.3d 1246 (2001)). We apply these standards separately to the drug and alcohol related conditions imposed here.

### B. Drug Evaluation and/or Treatment

RCW 9.94A.607(1) provides:

> Where the court *finds that the offender has a chemical dependency that has contributed to his or her offense*, the court may, as a condition of the sentence and subject to available resources, order the offender to participate in rehabilitative programs or otherwise to perform affirmative conduct reasonably related to the circumstances of the crime for which the offender has been

---

[14] The State does not discuss the drug and alcohol related conditions separately. Nor does it acknowledge that the superior court made an express written finding supporting drug evaluation and treatment in cause number 11-1-02533-2's judgment and sentence (obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation and third degree assault).

10

convicted and reasonably necessary or beneficial to the offender and the community in rehabilitating the offender.

(Emphasis added.)

Cause number 11-1-02533-2's judgment and sentence for Oberg's obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation and third degree assault convictions includes an express written finding supporting the drug evaluation and treatment condition: "The court finds that the offender has a chemical dependency that has contributed to the offense(s)." CP at 51. Thus, the court clearly complied with RCW 9.94A.607(1) as to this cause number.

In contrast, the judgment and sentence for cause number 10-1-03778-2 (second degree identity theft and unlawful possession of oxycodone) contains no finding about whether Oberg has a chemical dependency that contributed to these offenses. Accordingly, we must determine whether the superior court satisfied this finding requirement some other way. Although RCW 9.94A.607(1) requires the superior court to "find" that Oberg had a chemical dependency that contributed to his offenses, the State is correct that the statute does not specify what type of finding the court must make. Here, (1) Oberg admitted to having a substance abuse problem; (2) the parties and the court discussed at length how Oberg's drug use contributed to his offenses; (3) the record clearly establishes that the court found that Oberg had a chemical dependency and that this chemical dependency was a, if not *the*, driving force behind his offenses; and (4) the nature of the charges clearly reflect that drug use contributed to Oberg's offenses because the charges were all related to drug offenses. We hold that in this context it is clear that the superior court made the required finding.

Accordingly, we affirm the community custody condition requiring Oberg to undergo drug evaluations and treatment under cause numbers 11-1-02533-2 and 10-1-03778-2.

### C. Alcohol Evaluation and/or Treatment

Unlike the drug-related condition, nothing in the record suggests that the superior court made any findings about whether Oberg's alcohol use contributed to his offenses. Nor is there any independent evidence of such a relationship. Because the record does not support the alcohol evaluation and treatment condition, we remand to the superior court to strike this alcohol-related portion of Oberg's community custody conditions in cause numbers 10-1-03778-2 and 11-1-02533-2.[15] *See Jones*, 118 Wn. App. at 207-08.

### III. SAG AND PRP ISSUES

Most of Oberg's PRP repeats the issues he raises in his SAG. Therefore, unless otherwise noted, we address these issues together.

### A. Consecutive Sentence

Oberg challenges his consecutive sentence under cause number 10-1-03778-2. He asserts that (1) the superior court violated the global plea agreement by imposing the consecutive sentence; (2) the State breached the plea agreement by not reminding the court that it was bound by the plea agreement and failing to state in his (Oberg's) criminal history that the King County

---

[15] The State requests that we strike the superior court's notation "Drug/Alcohol eval. and follow up treatment recommended" under section 4.4 "**OTHER**" of the judgment and sentence in cause number 11-1-02533-2, because the treatment recommendation does not relate to property held in evidence. Br. of Resp't at 7 (note 3) (quoting CP at 54). Instead, as we discuss above, the superior court need strike only the reference to alcohol in section 4.4, leaving the drug evaluation and treatment recommendation intact.

convictions were other current offenses; and (3) if the superior court did not err, his guilty pleas were not knowing, intelligent, and voluntary because he was advised that the superior court was required to impose consecutive sentences under the global plea agreement. These assertions lack merit.[16]

Every document related to Oberg's pleas clearly states that the State would *recommend* concurrent sentences. Nothing in the record shows otherwise.[17] Almost every plea document states that the superior court was not bound by this agreed sentencing recommendation. And the Superior Court's plea colloquy with Oberg shows that concurrent sentencing was a mere recommendation, which that the court was not required to follow.

Similarly, the record does not support Oberg's contention that the State breached the plea agreement. On the contrary, as agreed, the State clearly recommended that the superior court impose concurrent sentences, and the superior court understood that this was the State's recommendation. Nor does the record supports Oberg's assertion that he was not advised that the superior court could ignore the State's recommendation. Again, (1) all the relevant documents that Oberg signed warned him that the sentencing court was not bound by the State's sentencing recommendation; (2) the Pierce County Superior Court specifically advised him during the plea colloquy that it was not bound by any part of the agreed recommendation,

---

[16] Because we consider the documents Oberg attached to his PRP, we need not address his PRP reply request for an order to produce certified records.

[17] In his PRP, Oberg specifically asserts that a September 2, 2011 King County memorandum stated that the concurrent sentencing aspect of his plea agreement was not merely a sentencing recommendation. Oberg is incorrect: This memorandum expressly stated that the concurrent sentencing aspect of the plea was part of the "[a]greed sentencing *recommendation*." PRP Attach. 1, Ex. A at 2.

including the concurrent sentence recommendation; and (3) Oberg assured the superior court that he understood this.

## B. No Exceptional Sentence

Oberg also argues that the superior court erred by imposing the consecutive sentence without finding any aggravating factors to support an exceptional sentence. We disagree. The Pierce County Superior Court ran the sentences for all of the Pierce County convictions (entered on the same day) concurrently, in compliance with RCW 9.94A.589(1)(a). Because the consecutive sentence was solely in relation to the King County convictions, which the King County Superior Court had previously entered on a different day, the consecutive sentence was not an exceptional one that required aggravating factors for support.[18] Accordingly, the Pierce County Superior Court did not violate RCW 9.94A.589(1)(a).

## C. Credit for Time Served

Oberg next challenges the superior court's award of only eight days of jail time credit, claiming that the plea agreement *required* the superior court to give him credit for all time served

---

[18] *See, in contrast, In re Pers. Restraint of Finstad,* 177 Wn.2d 501, 507-08, 301 P.3d 450 (2013) (RCW 9.94A.589(1)(a) requires sentencing court to impose concurrent sentences for convictions entered or sentenced *on the same day* unless imposing exceptional sentence under RCW 9.94A.535).

since his arrest on July 13, 2011.[19] This challenge also fails. As we have already explained, the superior court was not bound by the plea agreement's sentencing recommendation, and the record shows that Oberg was aware of that fact.

Nor does Oberg show that the superior court failed to comply with RCW 9.94A.505(6), which provides: "The sentencing court shall give the offender credit for all confinement time served before the sentencing if that confinement was *solely in regard to the offense for which the offender is being sentenced*." Under this statute, the Pierce County Superior Court had authority to give Oberg credit for time he had served on only the Pierce County charges for which it was sentencing him, not for time served in connection with other charges, including those in King County.

## D. DOSA ELIGIBILITY

Finally, Oberg argues that his "eligibility for DOSA is improperly stricken from the Pierce County plea statements as he is eligible for a DOSA sentencing alternative." SAG at 3.

---

[19] Oberg also asserts that the State breached the plea agreement by writing on the judgment and sentence that he was to receive eight-days credit for time served. But whether the State entered this notation on the judgment and sentence is outside the record before us. Accordingly, we do not address this assertion. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

In its response to Oberg's PRP, the State argues that the court erred in awarding Oberg credit for eight days of time served when he received credit for the King County convictions and was serving those sentences in the Pierce County jail pending the November 15 hearing. Because a personal restraint petition is intended to allow a *petitioner*, and not the State, to seek relief from improper restraint, *see* RAP 16.6(a), and the State does not raise this issue in a cross appeal, we decline to address it.

No. 43472-5-II (consolidated with Nos. 43479-2-II, 43482-2-II and 44900-5-II)

Whether Oberg could qualify for a DOSA sentence is outside the record before us.[20] Accordingly, we need not address this assertion. *McFarland*, 127 Wn.2d at 335.

We remand for resentencing on the third degree assault conviction (cause number 11-1-02533-2) and to strike the alcohol related community custody conditions related to the second degree identity theft and unlawful possession of oxycodone convictions (cause number 10-1-03778-2) and to the obtaining or attempting to obtain a controlled substance by fraud, deceit, or misrepresentation and third degree assault convictions (cause number 11-1-02533-2). We otherwise affirm Oberg's sentences, including his drug-related community custody condition; and we deny his personal restraint petition.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, P.J.

We concur:

Bjorgen, J.

Maxa, J.

---

[20] Moreover, because the State did not recommend and Oberg did not request a DOSA, his DOSA eligibility is irrelevant.

16