**Byrle L. DILLENBURG, Plaintiff-Appellant,**

v.

**A. Ludlow KRAMER, Secretary of State of the State of Washington, and Carl G. Erlandson, City Clerk of the City of Seattle, Defendants-Appellees.**

**No. 71-2647.**

United States Court of Appeals, Ninth Circuit.

Nov. 16, 1972.

Peter Greenfield (argued), Robert T. Czeisler, M. John Bundy, Roger M. Leed, Seattle, Wash., for plaintiff-appellant.

Wayne L. Williams, Asst. Atty. Gen. (argued), Slade Gorton, Atty. Gen., Olympia, Wash., for defendants-appellees.

Before LUMBARD,* HUFSTEDLER, and CHOY, Circuit Judges.

HUFSTEDLER, Circuit Judge:

■ This appeal presents the question: Does appellant's complaint challenging the constitutionality of Article VI, § 3, of the Constitution of the State of Washington [1] and of Washington's Revised Code § 29.01.080,[2] which deny voting rights to unpardoned persons convicted of crimes punishable by imprisonment in the state penitentiary, raise a substantial federal question requiring the convening of a three-judge court pursuant to 28 U.S.C. § 2281?[3]

Appellant was convicted for robbery and was sentenced to state prison in Washington in 1966. He was paroled in May 1970. Since his release from prison, he has been employed by the Public Defender's Office in Seattle. The Governor declined his request for restoration of his civil rights. His attempt to register to vote in September 1970 was thwarted solely because he is disenfranchised under the challenged Washington laws.

He filed this action for declaratory and injunctive relief alleging that the provisions of Washington law disqualifying him from voting violated the First, Eighth, and Fourteenth Amendments to the United States Constitution and Article 1, § 9, of the Constitution. The district court rejected the application and dismissed the complaint because appellant had failed to present a substantial federal question.

■ A federal question is not unsubstantial unless it is "obviously without merit" or unless " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' " (Ex Parte Poresky (1933) 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (citations omitted); cf. California Water Service Co.

---

* Honorable J. Edward Lumbard, Senior Judge, United States Court of Appeals for the Second Circuit, sitting by designation.

1. Article VI, § 3, states:
   "*Who Disqualified.* All idiots, insane persons, and persons convicted of infamous crime unless restored to their civil rights are excluded from the elective franchise."

2. The Revised Code of Washington § 29.01.080 states:
   " '*Infamous crime.*' An 'infamous crime' is a crime punishable by death or imprisonment in the state penitentiary."

3. 28 U.S.C. § 2281 provides:
   "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or any order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

v. City of Redding (1938) 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323.)[4]

We do not reach the substantiality of any federal question except the claim that the challenged law contravenes the Equal Protection Clause of the Fourteenth Amendment because we conclude that that claim is substantial enough to compel the convening of a three-judge district court.

■ "To decide whether a law violates the Equal Protection Clause, we look, in essence, to three things: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." Dunn v. Blumstein (1972) 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274; cf. Williams v. Rhodes (1968) 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24.

■ The interest asserted by appellant is the right to vote. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strikes at the heart of representative government." (Reynolds v. Sims (1964) 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506.) Because the right to vote is fundamental,[5] a governmental classification that impairs or denies the right will not survive equal protection attack by showing that the distinction on which the classification rests bears some national connection to a legitimate governmental end. "[I]t is certainly clear now that a more exacting test is required for any statute which 'place[s] a condition on the exercise of the right to vote.' . . . [I]f a challenged statute grants the right to vote

to some citizens and denies the franchise to others, 'the Court must determine whether the exclusions are *necessary* to promote a *compelling* state interest.' . . ." Dunn v. Blumstein, *supra*, 405 U.S. at 337, 92 S.Ct. at 1000.

Courts. have been hard pressed to define the state interest served by laws disenfranchising persons convicted of crimes. The temptation to identify the interest as state concern for additional punishment has been resisted because the characterization creates its own constitutional difficulties. Search for modern reasons to sustain the old governmental disenfranchisement prerogative has usually ended with a general pronouncement that a state has an interest in preventing persons who have been convicted of serious crimes from participating in the electoral process (*e. g.*, Green v. Board of Elections of City of New York (2d Cir. 1967) 380 F.2d 445, 451, cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840) or a quasi-metaphysical invocation that the interest is preservation of the "purity of the ballot box." (*E. g.*, Washington v. State (1884) 75 Ala. 582, the venerable sire of abundant progeny; cf. Kronlund v. Honstein (N.D.Ga.1971) 327 F.Supp. 71, 73.)

Few decisions have penetrated the disenfranchisement classification to ascertain whether the offenses that restrict or destroy voting rights have anything to do with the integrity of the electoral process or whether there is any constitutionally valid distinction between the class of offenses that disenfranchise and the class of offenses that do not. When the facade of the classification has been pierced, the disenfranchising laws have fared ill. (*E. g.*, Stephens v. Yeomans

4. The Ninth Circuit has consistently applied this standard when the substantiality of a federal question has been challenged. *See, e. g.*, Smith v. California (9th Cir. 1964) 336 F.2d 530; Carrigan v. Sunland-Tujunga Telephone Co. (9th Cir. 1959) 263 F.2d 568, cert. denied, 359 U.S. 975, 79 S.Ct. 893, 3 L.Ed.2d 841. For a recent application of the rule, see Taylor v. Smith (9th Cir. 1972) 461 F.2d 659.

5. The fundamental nature of the right to vote has been repeatedly stressed by the Supreme Court. *E. g.*, Dunn v. Blumstein, *supra;* Evans v. Cornman (1970) 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed. 2d 370; Kramer v. Union Free School District No. 15 (1969) 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583; Wesberry v. Sanders (1964) 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481.

(D.N.J. 3-judge court 1970) 327 F.Supp. 1182; Otsuka v. Hite (1966) 64 Cal.2d 596, 51 Cal.Rptr. 284, 414 P.2d 412.)

Washington law disenfranchises those persons convicted of crimes "punishable by death or imprisonment in the state penitentiary." (Wash.Rev.Code § 29.01.-080.) It is immaterial under the statute that the offender is not sentenced to death or to state prison. The classification is not based on any qualities of the offender; it rests solely on the nature of the punishment that can be given for an offense. The Washington Legislature's selection of the offenses that may subject a person to imprisonment in the state penitentiary and those that cannot do not follow any perceivable pattern. Among the offenses that are punishable by imprisonment in the state penitentiary are bigamy (Wash.Rev.Code § 9.15.-010), dueling (Wash.Rev.Code § 9.30.-010), adultery (Wash.Rev.Code § 9.79.-110), and membership in a subversive organization (Wash.Rev.Code § 9.81.-030). One convicted of bribing a witness can be sentenced to the penitentiary (Wash.Rev.Code § 9.18.040), but one who influences a juror cannot (Wash.Rev. Code § 9.18.060). A wide variety of offenses directly related to the electoral process cannot result in disenfranchisement because they do not carry a potential state prison sentence.[6]

Appellee does not explain why disenfranchisement of those convicted of offenses that can result in confinement in state prison is "necessary" to vindicate any identified state interest. (E. g., Kramer v. Union Free School District No. 15, supra, 395 U.S. at 632 and n. 14, 89 S.Ct. at 1886.) Indeed, appellee has not yet attempted to point out any distinction between those offenders who are disenfranchised and those who are not that bears some rational connection to a legitimate state aim. (E. g., Bullock v. Carter (1972) 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92.)

Appellee has chosen instead to rely upon the Supreme Court's summary affirmance in Beacham v. Braterman (S.D. Fla. 3-judge court 1969) 300 F.Supp. 182, aff'd without opinion (1969) 396 U.S. 12, 90 S.Ct. 153, 24 L.Ed.2d 11, and the holding in Green v. Board of Elections of the City of New York, supra, 380 F.2d 445, which cases, appellee says, establish the insubstantiality of appellant's constitutional contentions.

A summary affirmance without opinion in a case within the Supreme Court's obligatory appellate jurisdiction has very little precedential significance. (Frankfurter & Landis, "The Business of the Supreme Court at October Term 1929" (1930) 44 Harv.L.Rev. 1, 14. See also Serrano v. Priest (1971) 5 Cal.3d 584, 616–617, 96 Cal.Rptr. 601, 624, 487 P.2d 1241.) Were summary affirmance weightier, however, the decision in Beacham would not control this case. Beacham's treatment of the equal protection argument was confined to an unanalyzed quotation from Green. The Court did not address itself to the classification arguments presented here.

If Green is confined to its holding that Green did not have standing to challenge the constitutionality of New York disenfranchisement laws (380 F.2d at 452), it can be harmonized with the recent decisions of the Supreme Court in the voting rights area. Green had been convicted for conspiring to organize the Communist Party as a group to teach and to advocate the overthrow of our Government by force and violence. He was in no position to argue successfully that his crime was unrelated to potential disturbance of the elective process. However, to the extent that Green defines the equal protection issues in the terms of Metropolitan Casualty Ins. Co. v. Brownell (1935) 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (380 F.2d at 451), the decision cannot be squared with the reasoning of such cases as Dunn v. Blumstein, supra;

6. E. g., Wash.Rev.Code § 29.85.050 (fraudulently misleading voters in marking ballots); Wash.Rev.Code § 29.85.060 (voter coercion by election official); Wash.Rev. Code § 29.85.080 (solicitation of a bribe by candidate or voter); Wash.Rev.Code § 29.85.020 (tampering with ballots by election officer).

Bullock v. Carter, *supra*; Evans v. Cornman, *supra*; Cipriano v. City of Houma (1969) 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Kramer v. Union Free School District No. 15, *supra*; and Carrington v. Rash (1965) 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675.

■ Earlier in our constitutional history, laws disenfranchising persons convicted of crime may have been immune from attack. But constitutional concepts of equal protection are not immutably frozen like insects trapped in Devonian amber. "Notions of what constitutes equal treatment for purposes of the Equal Protection Clause *do* change." (Harper v. Virginia Board of Elections (1966) 383 U.S. 663, 669, 86 S.Ct. 1079, 1083, 16 L.Ed.2d 169.) In the wake of the many decisions dismantling restrictions on voting rights, we cannot say that this challenge to Washington laws is now unsubstantial.

The order denying the application to convene a three-judge court is vacated and the cause is remanded to the district court for further proceedings consistent with the views herein expressed.

LUMBARD, Circuit Judge (dissenting):

I dissent.

I would affirm the order of the District Court which denied Dillenburg's application for the convening of a three-judge court and dismissed his complaint.

Dillenburg was convicted of the felony of robbery in the King County Court on November 28, 1966 and was sentenced to 20 years in the state penitentiary, from which he was released on parole on May 4, 1970. He was not permitted to register to vote in Seattle because of his felony conviction and the fact that his civil rights had not been restored. Dillenburg asserts that the Constitution and implementing statutes of the State of Washington which exclude him from the elective franchise as a person convicted of an infamous crime are unconstitutional. I agree with District Judge McGov-

ern that no substantial constitutional question is presented.

From time immemorial felons have suffered such disabilities as the loss of voting rights, permanently or for a term of years, subject to restoration of rights or pardon. The state has a proper interest in imposing such disabilities on felons and its decision to do so has a rational basis, as elaborated by Judge Friendly in Green v. Board of Elections of the City of New York, 380 F.2d 445 (2 Cir. 1967) cert. den. 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). Thereafter, the Supreme Court at 396 U.S. 12 (1969) summarily affirmed Beacham v. Braterman, 300 F.Supp. 182 (1969) wherein a three-judge court held constitutional a similar exclusion of felons from the franchise by the Constitution and laws of Florida. Consequently, to ask two more judges to explore Dillenburg's complaint about the State of Washington denying him the right to vote seems to me to be wholly unnecessary and unprofitable.