**Ex parte Charles Henry GLENN.**

**No. 69056.**

Court of Criminal Appeals of Texas, En Banc.

May 22, 1985.

Rehearing Denied July 24, 1985.

See also, Tex.Cr.App., 652 S.W.2d 803.

John G. Tatum, Dallas, for appellant.

Henry Wade, Dist. Atty. & Ruth Lown, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction application for writ of habeas corpus filed pursuant to Article 11.07, V.A.C.C.P.

Applicant contends he was denied due process of law as enunciated in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), in that he was not afforded the required parole revocation hearings. He further claims Article 42.12, § 22, V.A.C.C.P., has been violated in that he was denied a revocation of parole hearing as provided therein.

Applicant alleges he was convicted of rape in Dallas County in 1966 and sentenced to 99 years' imprisonment; that he was released on parole in 1979; that while on parole he was convicted of burglary of a habitation in Dallas County and was sentenced to 25 years' imprisonment. He alleges that as a result of his burglary conviction while on parole his parole on his 99

year sentence was revoked by the Board of Pardons and Paroles and the Governor without the benefit of a parole revocation hearing of any kind.

The habeas corpus application was originally filed in the convicting court as required by Article 11.07, V.A.C.C.P. That court concluded his restraint was legal, and ordered the record in the cause forwarded to the Court of Criminal Appeals.

This Court ordered the cause filed and set, but subsequently ordered an evidentiary hearing in the convicting court to further develop the facts surrounding applicant's contentions. Such a hearing was conducted and the convicting court made findings of facts and conclusions of law. The record of the same was transmitted to this Court.

The record shows applicant was convicted of the offense of rape in Dallas County in Cause No. F–66–3001–KJ and sentenced to 99 years' imprisonment on December 16, 1966. Applicant was released on parole on August 30, 1979, subject to certain conditions, including "Rule 7—Legal Obligation: I shall obey all Municipal, County, State and Federal laws." While on parole, applicant was convicted on June 15, 1981 by a jury of the offense of a burglary of a habitation in Dallas County. On July 2, 1981, the court assessed his punishment at 25 years' imprisonment as a second offender in Cause No. F–81–6068–RI. Sentence was imposed July 24, 1981. Notice of appeal was given.[1]

After conviction applicant was transferred to the Department of Corrections as a result of his burglary conviction. It was not until September 23, 1981 that a pre-revocation of parole arrest warrant was issued. No parole revocation hearing was conducted. On June 9, 1982 the pre-revocation warrant was withdrawn. On June 10, 1982, the Board, without notice to and in absence of applicant, recommended to the Governor the revocation of the parole on the basis of the burglary conviction. On

July 23, 1982, the Governor issued his order revoking applicant's parole previously granted in connection with his rape conviction.

Applicant testified at the evidentiary hearing that after being charged with burglary he talked to his parole officer, that he made bond on the burglary charge and that no action was taken with regard to his parole. After the conviction for burglary, applicant related his parole officer, upon inquiry, assured him repeatedly he would have a revocation hearing. At the Department of Corrections the parole counselor at the Diagnostic Unit told him, in response to his request, that two weeks after assignment to a unit he would be returned to "Diagnostic" for a revocation hearing. Applicant was transferred to Goree and then to the Eastham Unit. He wrote a parole counselor at Eastham who later promised a hearing. Applicant then wrote Bruce Folkes, Inmate Counselor in Huntsville, who told him to write the Board of Pardons and Paroles about a hearing. Applicant wrote to Connie Jackson, Member, and to Gladys Sommers, Director of Staff Services. He received no answer. He then wrote the State Bar of Texas and the law schools at the University of Texas and University of Washington, and the United States Parole Board. An attorney from the State Bar wrote that applicant would become eligible on the new sentence (burglary), but gave no answer about the requested revocation of parole hearing.

Applicant testified he went to the prison law library and found the *Morrissey* decision. In light of *Morrissey* he again wrote the Board requesting a hearing. He was then informed to wait until he became eligible for parole on the burglary conviction. Applicant was then visited on February 5, 1982 by Abel Alaniz, parole officer, who tried to get him to sign a waiver of a revocation hearing. Applicant stated he refused and eventually signed a written request for a revocation hearing. Appli-

---

**1.** The conviction was affirmed by the Dallas Court of Appeals. *Glenn v. State,* (Tex.App.— Dallas—1983—No. 05–81–856–CR).

cant related he was later notified that his parole had been revoked. There had been no hearing.

Applicant testified he wanted a revocation hearing in order to be able to present to the Board mitigating circumstances. He wanted to show he lived at home with his mother and father, that he was employed, that he still contested the burglary charge, and wanted to bring the trial transcript of the alibi testimony to the attention of the Board and have his family and friends testify for him.

At the evidentiary hearing Glen Heckman, Parole Commissioner, Harry Green, Staff Attorney, Milton Watkin, Parole Examiner, and Hugh Dismukes, Assistant Coordinator of Hearings, all with the Board, testified. From their testimony we learn that after the *Morrissey* decision the Board for some time conducted two hearings, an on-site or probable cause hearing, and a final hearing usually at the Diagnostic Unit of the Department of Corrections in Huntsville. Thereafter the Board changed its procedure to a *one*-site hearing[2] in two phases, a bifurcated hearing. The issue of parole violation was addressed initially. If a violation was found, then the hearing proceeded to the adjustment phase wherein the parolee's overall adjustment since release on parole is considered before action on the parole revocation is taken.

On February 4, 1982, § 145.41(b)(5) of the Rules of the Texas Board of Pardons and Paroles became effective. It provided in effect for a revocation without a hearing under certain conditions. The witnesses related this rule was known as the "automatic rule" where there had been a felony conviction while the parolee was on parole and the same was the basis of the revocation. In such cases there are no hearings where the parolee is heard. It was related that issues such as guilt of the new felony charge determined in other forums are not relitigated. The witnesses stated that where there has been a new felony conviction, mitigating circumstances, such as a good employment record, church attendance, defenses to the new felony charge like alibi, etc., will not justify continuing an individual on parole.

Dismukes testified the Board received a report of applicant's violation of parole conditions on April 3, 1981. It was decided not to issue a pre-revocation arrest warrant, but to permit applicant Glenn to remain on parole; that after applicant was convicted in July the pre-revocation arrest warrant was issued on September 23, 1981. Dismukes admitted applicant was not afforded a timely hearing on revocation, but was in the Department of Corrections by virtue of the new 25 year sentence for burglary. On February 4, 1982, the "automatic rule," 145.41(b)(5), came into effect. On February 5, 1982, Parole Officer Alaniz was sent to see applicant in response to his letter to the Board. Applicant signed a written request for a revocation hearing. No hearing was held, but on June 9, 1982, the pre-revocation arrest warrant was withdrawn because there had been no timely hearing. The next day, June 10, 1982, the Board, under the "automatic rule," recommended revocation of applicant's parole based on the new conviction which was the only violation of parole conditions or rules alleged. On July 23, 1983, the Governor acted favorably on that revocation.

At the conclusion of the evidentiary hearing the convicting court found, inter alia, the applicant was convicted of burglary of a habitation, the offense which formed the basis of the parole revocation, prior to the effective date of the "automatic rule," § 145.41(b)(5); that applicant requested a revocation hearing, a "final" hearing by the Board and did not receive one; that on June 10, 1982, the Board recommended parole revocation to the Governor without a hearing, but had before it record evidence of the burglary conviction, recommendation from the Board's administrative staff, applicant's parole file, transcription of evidence of applicant's alibi defense testimony from the burglary trial. The convicting

---

2. The hearing is to be distinguished from an *on*-site hearing.

court recommended the parole revocation order be held "void."

We shall now consider applicant's claims his constitutional due process rights have been violated as well as the requirements of Article 42.12, § 22, V.A.C.C.P.

■ In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court enunciated minimal due process requirements for parole revocation. Before parole may be revoked, a preliminary or on-site hearing before an independent hearing officer must be held to determine whether probable cause exists to believe that the parolee has violated the conditions of probation. Once probable cause is found, a formal and final hearing is required to evaluate the alleged violations and to decide whether the evidence warrants revocation.

At this latter hearing, the Supreme Court made clear "[t]he parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, *or, if he did,* that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 488, 92 S.Ct. at 2603. (Emphasis supplied.)

The Court also made clear that this hearing must comply with certain procedural requirements: written notice, disclosure to the parolee of the evidence against him, an opportunity to be heard and to present witnesses and documentary evidence, the right to cross-examine adverse witnesses, a neutral hearing body, and a written statement by the factfinder as to the evidence relied upon and the reasons for revoking parole. Id. at 489, 92 S.Ct. 2593.

In *Moody v. Daggett,* 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the Supreme Court held that, where a federal parolee had already been convicted of a new crime, the need for the preliminary hearing required by *Morrissey* no longer existed because the conviction provided the requisite probable cause to believe that the parolee had violated the terms of his parole.

While the Court did not directly address the need for a final revocation hearing, under such circumstances, there was language indicating or suggesting that due process requires some form of final hearing. The Court observed that the Parole Commission had discretion to revoke parole at the appropriate time and then stated:

"Finally, there is a practical aspect to consider, for in cases such as this, in which the parolee admits, or has been convicted of an offense plainly constituting a parole violation, the only remaining inquiry is whether continued release is justified notwithstanding the violation." Id. at 89, 97 S.Ct. at 279.

In *Moss v. Patterson,* 555 F.2d 137 (6th Cir.1977), the Court concluded that, although the fact of a violation was conclusively determined in the criminal trial, the parolee was still entitled to a hearing where he or she may present mitigating evidence to contest the revocation. See also *Shepard v. United States Board of Parole,* 541 F.2d 322 (2nd Cir.1976).[3]

In *Heinz v. McNutt,* 582 F.2d 1190 (9th Cir.1978), the Court noted that parole revocation considerations may differ from those involved in sentencing for a criminal conviction. There the Court held the Washington statute involved violated due process and was unconstitutional insofar as it permitted automatic revocation of parole without the benefit of a final hearing for persons convicted of a felony while on parole, even though conviction while on parole provided probable cause to believe a parole violation occurred. See also *United States Ex rel. Hahn v. Revis,* 520 F.2d 632 (7th Cir.1975), vacated on other grounds, 560 F.2d 264 (7th Cir.1977).

Twenty-nine days before the *Heinz* decision, the Washington Supreme Court reached the same result regarding the

**3.** *Shepard* was vacated and remanded for consideration in light of *Moody v. Daggett,* supra, apparently to determine if Moody had rendered moot the timely hearing issue. 429 U.S. 1057, 97 S.Ct. 779, 50 L.Ed.2d 773 (1977). On remand the Court of Appeals reversed and remanded the case to the district court as moot. 554 F.2d 64 (2nd Cir.1977).

state statute in *In re Akridge*, 90 Wash.2d 350, 581 P.2d 1050 (1978). There the Court stated its narrow holding that *Morrissey* requires the parolee have an opportunity to explain why a subsequent conviction should not result in parole revocation.

Citing *Akridge* and *Heinz*, the Washington Supreme Court again in *In re Haverty*, 94 Wash.2d 621, 618 P.2d 1011 (1980), held that failure to give a parolee an opportunity to explain why a subsequent conviction should not result in parole revocation, when the parolee's parole was administratively revoked upon conviction for a burglary while on parole, violated the parolee's due process right to a final hearing under *Morrissey*. See also *Emery v. Oberquell*, 95 Wash.2d 789, 630 P.2d 1352 (1981); *Pierce v. State Dept. of Social and Health Services*, 97 Wash.2d 552, 646 P.2d 1382 (1982).

Another line of cases hold, however, that due process is not violated and it is constitutional to delay the final revocation hearing where the parolee has been convicted of crimes committed during parole or confined upon his guilty pleas in open court, and where a detainer has been issued based upon parole violation warrants to take effect when such parolee-prisoner is released from the subsequent detention. *Reese v. United States Board of Parole*, 530 F.2d 231 (9th Cir.1976) cert. den. 429 U.S. 999, 97 S.Ct. 525, 50 L.Ed.2d 609; *Moultrie v. Georgia*, 464 F.2d 551 (5th Cir.1972); *Coronado v. United States Board of Parole*, 551 F.2d 275 (10th Cir.1977).

Further, it has been held that two separate parole revocation hearings are not required and a proper consolidated hearing may satisfy due process. *Vrieling v. Oregon State Board of Parole*, 21 Or.App. 245, 534 P.2d 516 (1975).

In *Vrieling* an Oregon parolee was permitted to go to Washington state. Parole was later revoked there in a consolidated hearing before a hearing officer for the Compact Administrator. The hearing officer found probable cause, determined that several parole violations had in fact occurred and made recommendations the parolee not be allowed to remain on parole in Washington and to hold for action by the Oregon parole board. That board later administratively revoked without further hearings. The Oregon Court of Appeals found the consolidated hearing in Washington satisfied the due process requirements of *Morrissey*.[4] Reversal was ordered because the record did not show proper notice to parolee.

In *State ex rel. Bertrand v. Hunt*, 308 So.2d 760 (La.1975), the Louisiana Supreme Court upheld a state statute regarding revocation of parole upon conviction of a felony in that state.[5] Here the parole was automatically revoked by the parole board following a felony conviction. In determining whether *Morrissey* applied, the Court relied upon the admonition therein that a parolee cannot relitigate issues determined against him in other forums such as when the revocation is based on conviction of another crime. The Court stated, "The lesson Morrissey teaches is unmistakable and clear. If the parolee admits violation, nothing else is required. Due process has been satisfied. With regard to procedural and substantive rights, the Court wrote:

> "[T]he arrest and prosecution of a parolee for a criminal offense is, in itself, adequate protection against the evils and possible abuses which *Morrissey* was intended to guard against. The parolee's trial in a court of law, under strict standards of proof required in a criminal prosecution and the rules of evidence and

---

**4.** *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), held that the *Morrissey* requirements applied to revocation of probation cases. This Court has held that Texas procedure for revoking probation affords a probationer greater rights than *Morrissey* or *Gagnon v. Scarpelli*, supra, and that the Texas unitary hearing procedure satisfied due process re-

quirements. *Whisenant v. State*, 557 S.W.2d 102 (Tex.Cr.App.1977).

**5.** La.Sta.Ann.—R.S. 15:574.10 provides in part:
> "When a person is convicted in this state of a felony committed while on parole, his parole shall be deemed revoked as of the date of the commission of the felony."

procedure which apply to such a proceeding, afford the parolee far more protection than do the hearing procedures set forth in *Morrissey*."

The Court concluded that the due process requirements of *Morrissey* were not intended to be fully applicable when revocation is based on a parolee's conviction of other crimes while on parole. Thus a final revocation hearing was not necessary as a due process requirement under the circumstances of a final conviction.[6] Accord: *State ex rel. Bertrand v. Hunt,* 325 So.2d 788 (La.1976); *State ex rel. Clark v. Hunt,* 337 So.2d 438 (La.1976).

As can be seen, the authorities are not fully in accord as to what process is due when the parolee has been convicted of a felony offense while on parole which is a violation of the conditions of parole. This is with regard to whether a final parole revocation must be held despite the conviction. Some cases hold that *Morrissey* requires a final hearing to evaluate any contested relevant facts, to give the parolee an opportunity to explain before the Board why the conviction should not result in parole revocation. Others noted that *Morrissey* teaches a parolee cannot relitigate issues determined against him in other forums, and that after conviction a final parole hearing is nothing but superfluous[7] and an unnecessary burden on any state parole system.

In *Reese v. United States Board of Parole,* supra, the Court wrote:

"But it appears clear that *Morrissey* was written within the framework of a situation where the facts upon which the entire parole revocation proceeding is based could be contested by the alleged violator. It was that uncertainty which due process required to be promptly resolved by a probable cause hearing and a subsequent final hearing. * * * We do not find the same reasons either appropriate or compelling to the case of a parole violator who has been convicted of a subsequent crime or is confined upon his own plea of guilty in open court. * * It is also difficult to relate *Morrissey v. Brewer* to either petitioner. There, the cases were both state convictions with subsequent parole, in each case, parole was attempted to be revoked not on the bases of a subsequent arrest and conviction, but on the strength of a parole officer's report asserting a number of violations of restrictions, most of which could be subject to controversion."

The Court in *Reese* also stated:

"Another contention is that the parolee is entitled to present mitigating circumstances. Mitigating circumstances, like beauty, may be found in the eyes of the beholder, and no doubt there are a few, if any, suffering penal confinement who do not find such circumstances to explain their own plight. This is not to gainsay that in some cases those circumstances may be sound and constitute convincing material to present to the parole board. There is nothing, however, in either petition before us here suggesting there are mitigating circumstances, or, if so, what they are. It is difficult to imagine just what Reese can claim as mitigating his parole violation crime of first degree burglary, or what Marine can claim as mitigating his parole violation crime of bank robbery."

We need not answer the due process question as we conclude the issue before us is determined by this statutory provision upon which applicant also relies.

Article 42.12, § 22, V.A.C.C.P., provides in part:

"Whenever a prisoner or a person granted a conditional pardon is accused

---

6. The parolee had been accorded a preliminary hearing in Texas.

7. In *State ex rel. Bertrand v. Hunt,* 308 So.2d 760 (La.1960), the Court stated:
"... the final revocation hearing could be nothing but superfluous since there is only one conclusion that can be reached by the hearing body ... that the parolee was in fact convicted of other crimes while on parole and that his conviction constitutes a violation of one of the conditions of parole."

of a violation of his parole, mandatory supervision, or conditional pardon on information and complaint by a law enforcement officer or parole officer, he shall be entitled to be heard on such charges before the Board or its designee under such rules and regulations as the Board may adopt; provided, however, said hearing shall be a public hearing and shall be held within ninety days of the date of arrest under a warrant issued by the Board of Pardons and Paroles or the Governor and time and place set by the Board...."

The State recognizes the provisions of § 22 of Article 44.12, but contends that applicant's parole was revoked under the provisions of § 145.41(b)(5) of the Rules of the Texas Board of Pardons and Paroles (eff. Feb. 4, 1982), Texas Register, Vol. 6, No. 90, p. 4426 (Dec. 4, 1981); Texas Register, Vol. 7, No. 6, p. 293 (Jan. 22, 1982). It argues that applicant's parole was revoked under this "automatic rule" and that a hearing was not necessary.

Section 145.41 provides:

*"§ 145.41(.001.) Allegation of Violation: Review and Initial Disposition.*

"(a) At such time as the Board learns of an allegation of violation of one or more terms and conditions of release by an administrative releasee, the Board shall refer the matter to a parole panel for review and initial determination of disposition.

"(b) A parole panel shall review the information and make an initial determination to:

"(1) request the governor to order the issuance of a prerevocation warrant;

"(2) order the issuance of a notice of allegation of administrative release violations;

"(3) continue the release of the alleged violator pending disposition of any charges;

"(4) make final disposition of the matter by continuation of release un-

der the same or modified conditions; or

"(5) recommend revocation and request the governor to issue a revocation warrant, provided that this action shall be taken only when the releasee has committed a felony offense during the time of his or her release and has been convicted at the trial court level and sentenced to penal incarceration for the offense, whether conviction is appealed or not.

"(A) Revocation of administrative release under paragraph (5) of this subsection shall be accomplished administratively and a release proceeded against hereunder shall not be entitled to an administrative release revocation hearing;

"(B) After the panel has acted under subsection (b)(5) of this section, further proceedings shall be in accord with § 145.53(205.03.03.020) of this title (relating to Revocation of Administrative Release (Parole, Mandatory Supervision) Recommendation; Proclamation; Warrant).

"(C) Should the releasee's conviction be reversed by a court of competent jurisdiction then he or she shall be entitled to reinstatement of the administrative release previously revoked hereunder, upon notification of the board of said judicial action and provision to the board of a certified copy of the judicial order effectuating the reversal; provided, however, that the board may proceed against a releasee reinstated under the subsection on the basis of any of the allegation(s) of violation previously filed against the releasee but not yet disposed of."

■ The State recognizes that the prerevocation warrant was issued on September 23, 1981 [8] and that § 145.41(b)(5) did not become effective until February 4, 1982, but argues that § 145.41b(5) governed the procedure at the time applicant's parole was revoked. The Legislature by virtue of the enactment of § 22 of Article

---

**8.** The time of arrest of the applicant under this warrant is not made clear by this record.

42.12 provided statutorily the parolee shall be entitled to a public hearing before the Board or its designee under such rules and regulations adopted by the Board. Under this grant of authority the Board cannot by its rules abrogate the statutorily granted right to a public hearing. In enacting § 145.41(b)(5), the Board was without the scope of its authority, no matter how seemingly economical, logical and reasonable the rule may be.[9]

 Thus applicant was entitled to a hearing before the Board or its designee despite the conviction for a felony committed while on parole and despite said § 145.-41(b)(5)(A). See *Ex parte Maceyra*, 690 S.W.2d 572 (Tex.Cr.App.1985) (Opinion on State's Motion for Rehearing). The Governor's order revoking parole based on the Board's recommendation is hereby set aside. Applicant is now entitled to the hearing provided by § 22 of Article 42.12 which he has long sought, in absence of an affirmative waiver thereof, intelligently and voluntarily made. We do not regard the 90 day time limitation in said statute as forever barring the revocation of parole under the circumstances here described.

Applicant is entitled to the relief for which he prays. It is so ordered.

TEAGUE, Judge, concurring.

The majority correctly holds that Charles Henry Glenn's parole was unlawfully revoked because the Board of Pardons and Paroles failed to accord him a "final" hearing before the Governor, acting on the recommendation of the Board, ordered his parole revoked.

I only concur because I am afraid that the majority opinion may be misinterpreted by the members and officials of the Board of Pardons and Paroles.

It is my firm belief that in light of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct.

2593, 33 L.Ed.2d 484 (1972), the Board of Pardons and Paroles' Rule 145.41(b)(5) is violative of the due process clause of the Fourteenth Amendment to the Federal Constitution. It is also my belief that such rule is violative of the due course of law provision of the State Constitution, as well as being in violation of Art. 42.12, Sec. 22, V.A.C.C.P.

The Board, however, is correct in its argument that in the event a prisoner, who has been released on discretionary parole, has been convicted of a felony offense, such person is not entitled to a preliminary or on-site hearing. See *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). However, unless the prisoner waives his right to a "final" hearing, he must be afforded a "final" hearing by the Board before the Governor, pursuant to recommendation by the Board, may order the prisoner's parole revoked. *Morrissey v. Brewer*, supra; Art. 42.12, Sec. 22, supra.

I concur.

9. The State has argued that the parolee could not relitigate the validity of the burglary conviction but that nevertheless the alibi testimony was before the Board at the time of revocation as well as evidence of applicant's residence and place of employment, etc., all of which applicant wanted presented; that a hearing now would not result in a different conclusion.